## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————— ) | |
| VANESSA E. GATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-1462 (RWR) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ——————————————— ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Vanessa Gates filed this complaint as the personal representative of the estate of her daughter, Tiffany Gates-Jackson, against the United States of America and the District of Columbia ("the District"), alleging that the defendants' negligence was responsible for Gates-Jackson's death. The defendants have moved to dismiss the complaint. Because the complaint states a plausible claim of negligence against the District of Columbia, but because the plaintiff has conceded the United States' motion to dismiss the complaint with prejudice, the District's motion to dismiss will be denied and the United States' motion to dismiss will be granted.

### BACKGROUND

In August 2008, Roderick Ridley was arrested and charged with committing arson at Gates-Jackson's District of Columbia apartment. Gates-Jackson assisted the District of Columbia Metropolitan Police Department ("MPD") with the prosecution

-2-

against Ridley.  In return, the District provided her with
victims' assistance funds and protection from Ridley.  Compl.
¶¶ 11-14.  Ridley was convicted of arson and incarcerated in the
District of Columbia Department of Corrections ("DOC").  Id.
¶¶ 15-16.

Ridley was eventually transferred from the District of
Columbia Jail to a halfway house, from which he absconded in
October 2008.  Compl. ¶¶ 16-17.  The District and the United
States Marshals Service notified Gates-Jackson of Ridley's
escape.  Even though several judges had ordered Ridley to stay
away from Gates-Jackson's apartment, the District and Marshals
Service helped her relocate into a "safe home" to protect her
from further harm.  Gates alleges that the District and the
Marshals Service were in frequent contact with Gates-Jackson, and
provided her with the personal telephone numbers of some of their
agents, including the telephone number for Inspector
Robert Hoffmaster of the Marshals Service.  Id. ¶¶ 18-23.

Gates-Jackson lived in the safe home for approximately one
month, but was moved back into her apartment in November 2008.
Compl. ¶ 25.  On November 21, 2008, Gates-Jackson telephoned 911
to request emergency assistance because she saw Ridley near her
apartment.  Id. ¶ 26.  An MPD officer spoke with her but did not
see Ridley.  Id. ¶¶ 27-28.  She saw Ridley later and called
Inspector Hoffmaster.  Id. ¶ 29.  The Inspector continued his

-3-

telephone call with Gates-Jackson while he traveled to her
apartment.  After Inspector Hoffmaster arrived at Gates-Jackson's
apartment and was parked outside, Gates-Jackson told Hoffmaster
that she needed immediate assistance because Ridley was kicking
down her apartment door.  Hoffmaster waited outside Gates-
Jackson's apartment for MPD backup.  Over the phone, Hoffmaster
heard Ridley kick down Gates-Jackson's door and physically
attack her.  Gates-Jackson died from Ridley's beating.  Id.
¶¶ 31-36.

   Gates filed this complaint in August 2011, alleging one
count of negligence against both defendants (Count I).  Compl.
¶¶ 51-55.  Gates' complaint asserts that the District departed
from the applicable standards of care in numerous ways, including
by failing to conduct an accurate DOC security classification of
Ridley and to prevent his escape, and by failing to provide
protection to Gates-Jackson and to place a "lookout" for Ridley.
Id. ¶¶ 40-41, 44-45.  The complaint alleges that the Marshals
Service departed from the applicable standards of care by failing
to provide protection for Gates-Jackson, and by failing to arrest
Ridley.  Id. ¶ 49.  Both defendants have now moved to dismiss
under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## DISCUSSION

   Rule 12(b)(1) provides that a federal court must dismiss a
case when it lacks subject matter jurisdiction.  Fed. R. Civ. P.

-4-

12(b)(1).  "'Before a court may address the merits of a
complaint, it must assure that it has jurisdiction to entertain
the claims.'"  Cornish v. Dudas, 715 F. Supp. 2d 56, 60 (D.D.C.
2010) (quoting Marshall v. Honeywell Tech. Solutions, Inc., 675
F. Supp. 2d 22, 24 (D.D.C. 2009)).  It is the plaintiff's burden
to demonstrate subject matter jurisdiction.  Shuler v. United
States, 531 F.3d 930, 932 (D.C. Cir. 2008).  If the plaintiff
cannot meet her burden, the court must dismiss the action.  Steel
Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)
(citing Ex parte McCardle, 74 U.S. 506 (1868)).  In considering a
motion to dismiss for lack of subject matter jurisdiction, a
court "'treat[s] the complaint's factual allegations as true'"
and "'grant[s] plaintiff 'the benefit of all inferences that can
be derived from the facts alleged.'"  Nat'l Whistleblower Ctr. v.
Department of Health and Human Services, 839 F. Supp. 2d 40, 44
(D.D.C. 2012) (quoting Sparrow v. United Air Lines, Inc., 216
F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation omitted)).
However, "[b]ecause subject matter jurisdiction focuses on the
court's power to hear the claim, . . . the court must give the
plaintiff's factual allegations closer scrutiny when resolving a
Rule 12(b)(1) motion than would be required for a Rule 12(b)(6)
motion[.]"  Aref v. Holder, 774 F. Supp. 2d 147, 159 (D.D.C.
2011).

-5-

"'A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.'" Howard Univ. v. Watkins, 857 F. Supp. 2d 67, 71 (D.D.C. 2012) (quoting Peavey v. Holder, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))).  Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint.  Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  "The complaint must be construed in the light most favorable to the plaintiff and 'the court must assume the truth of all well-pleaded allegations.'"  Watkins, 857 F. Supp. 2d at 71 (quoting Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004)).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]"  Twombly, 550 U.S. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

-6-

entitlement to relief.'" Iqbal, 556 U.S. at 662 (quoting

Twombly, 550 U.S. at 557.

I.   NOTICE UNDER D.C. CODE § 12-309

      The District argues that the negligence claim should be

dismissed for lack of jurisdiction because the plaintiff failed

to provide timely and proper notice of a claim under D.C. Code

§ 12-309.  Under that provision,

> [a]n action may not be maintained against the District
> of Columbia for unliquidated damages to person or
> property unless, within six months after the injury or
> damage was sustained, the claimant, [her] agent, or
> attorney has given notice in writing to the Mayor of
> the District of Columbia of the approximate time,
> place, cause, and circumstances of the injury or
> damage.

D.C. Code § 12-309.  The notification requirement is strictly

applied, and the provision is "'construed narrowly'" against

claimants.  Snowder v. Dist. of Columbia, 949 A.2d 590, 600 (D.C.

2008) (quoting Gross v. Dist. of Columbia, 734 A.2d 1077, 1081

(D.C. 1999)); Dist. of Columbia v. Dunmore, 662 A.2d 1356 (D.C.

1995).  "Only two types of notice can satisfy the requirements of

Section 12-309, however: (1) a written notice to the Mayor of the

District of Columbia, or (2) a police report prepared in the

regular course of duty."  Blocker-Burnette v. Dist. of Columbia,

730 F. Supp. 2d 200, 204 (D.D.C. 2010) (citing Brown v. Dist. of

Columbia, 251 F. Supp. 2d 152, 165 (D.D.C. 2003)).  "Section

12-309 makes clear that police reports are the only acceptable

alternatives to a formal notice," and "[t]he court is not free to

-7-

go beyond the express language of the statute and authorize any additional documents to meet its requirements." Doe v. Dist. of Columbia, 697 A.2d 23, 28 (D.C. 1997).

The District argues the plaintiff failed to comply with § 12-309 because the injury occurred on November 21, 2008, and Gates did not provide a notice of claim to the District until November 2010.  Dist.'s Mem. in Supp. of Mot. to Dismiss ("Dist.'s Mem.") at 11-12.  However, Gates argues, and the District does not dispute, that she met the requirements of § 12-309 because Officer Manuel Gaffney prepared a police report in November 2008 in the regular course of his duty with the MPD which provided the District sufficient notice of the time, place, cause, and circumstances of the injury suffered by Gates-Jackson. Pl.'s Opp'n to Dist.'s Mot. to Dismiss at 13.  Because police reports are an acceptable alternative to formal notice, and the District does not dispute that Gaffney's report was sufficiently detailed to provide notice, the motion to dismiss for lack of subject matter jurisdiction will be denied.

II.  NEGLIGENCE CLAIM AGAINST THE DISTRICT

The District argues that Gates fails to state a plausible claim of negligence for two reasons.  First, the District argues that the complaint fails to state a claim of negligence against the District because it was not highly foreseeable that Ridley would attack Gates-Jackson in the manner that he did.

-8-

The District points out that Ridley was ordered to stay away from Gates-Jackson, and that as soon as Gates-Jackson telephoned emergency services, the MPD responded to the call in the same manner as "they would to any other call to" emergency services. Dist.'s Mem. at 5.  Second, the District argues that the negligence alleged by Gates "falls squarely within the crosshairs" of the public duty doctrine, which shields municipalities from negligence claims.  Dist.'s Mem. at 6-9.

To establish negligence under D.C. law, a plaintiff must allege "'a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" Sigmund v. Starwood Urban Retail VI, LLC, 617 F.3d 512, 514 (D.C. Cir. 2010) (quoting Dist. of Columbia v. Beretta, 872 A.2d 633, 642 n.3 (D.C. 2005) (internal quotation omitted)).  Both of the District's arguments pertain to the "duty" element.

A.   Heightened foreseeability for acts of a third party

Where a plaintiff attempts to hold a defendant liable for injuries caused by the intervening criminal act of a third party, District of Columbia courts generally apply a "heightened foreseeability standard," see Bd. of Trustees v. DiSalvo, 974 A.2d 868, 871 (D.C. 2009); Bruno v. W. Union Fin. Servs., 973 A.2d 713, 719 (D.C. 2009), which seeks to determine whether "the criminal act was so foreseeable that a duty arises to guard

against it." <u>Sigmund</u>, 617 F.3d at 514 (quoting <u>Beretta</u>, 872 A.2d
at 641).  Although courts usually consider "foreseeability . . .
important to issues of proximate causation and conformity to the
standard of care, issues that arise only after a duty has been
found," courts applying District of Columbia law have "repeatedly
spoken of the heightened foreseeability requirement in terms of
duty." <u>Workman v. United Methodist Comm. on Relief</u>, 320 F.3d
259, 265 (D.C. Cir. 2003) (citing <u>Graham v. M. & J. Corp.</u>, 424
A.2d 103, 105 (D.C. 1980)); <u>Potts v. Dist. of Columbia</u>, 697 A.2d
1249, 1252 (D.C. 1997); <u>see also</u> <u>McKethean v. Wash. Metro. Area
Transit Auth.</u>, 588 A.2d 708, 717 (D.C. 1991); <u>DiSalvo</u>, 974 A.2d
at 871-72 (stating that "heightened foreseeability factors
directly into the duty analysis" and that "consideration of
whether a duty exists to protect another from intervening
criminal acts includes consideration of heightened
foreseeability").  Generalized notice is insufficient to create
an obligation; for the risk of third-party criminality to be
foreseeable, "the evidence must demonstrate 'that the defendant
had reason to anticipate the type of particular criminal attack
that actually occurred.'" <u>G'Sell v. Carven</u>, 724 F. Supp. 2d 101,
108 (D.D.C. 2010) (quoting <u>DiSalvo</u>, 974 A.2d at 873).
"[H]eightened foreseeability 'does not require previous
occurrences of the particular type of harm, but can be met
instead by a combination of factors which give defendants an

-10-

increased awareness of the danger of a particular criminal act.'" DiSalvo, 974 A.2d at 872 (quoting Dist. of Columbia v. Doe, 524 A.2d 30, 33 (D.C. 1987)).

Here, the complaint alleges facts that plausibly give rise to a duty on behalf of the District toward Gates-Jackson.  Taking the facts alleged in the complaint as true, the District should have been aware and did demonstrate awareness of the danger that Ridley would attack Gates-Jackson at her apartment after Gates-Jackson helped the District in Ridley's prosecution.  The District helped place her in a safe-home to protect her from being further harmed by Ridley in her home, and gave her personal telephone numbers of District agents.  Ridley had already been convicted for trying to burn down Gates-Jackson's apartment, and the protective orders against Ridley should have alerted the District to the fact that Ridley posed a significant danger to Gates-Jackson.  Id. at 5-6.

   B.   Public duty doctrine

The District also argues that the complaint should be dismissed because the duty to protect Gates-Jackson was no different than the MPD's general duty to protect the public, which "falls squarely within the crosshairs" of the public duty doctrine.  Dist.'s Mem. at 9.  "The public duty doctrine has long protected municipalities from negligence claims because it establishes that '[t]he duty to provide public services is owed

-11-

to the public at large,' not to any specific individual."
McGaughey v. Dist. of Columbia, 684 F.3d 1355, 1358 (D.C. Cir.
2012) (quoting Warren v. Dist. of Columbia, 444 A.2d 1, 3 (D.C.
1981)).  However, there are situations where the public duty
doctrine does not protect the District from suit.  First, where
the government is affirmatively responsible for injury through
ordinary negligence resulting from the use of its police powers,
the public duty doctrine will not apply.  See Liser v. Smith, 254
F. Supp. 2d 89, 102 (D.D.C. 2003); Dist. of Columbia v. Evans,
644 A.2d 1008, 1017 n.8 (D.C. 1994) (ruling that the public duty
doctrine was not applicable where plaintiff alleged that police
negligently shot and killed her epileptic son).  Second, the
public duty doctrine does not protect the District from liability
if a special relationship between the government and the victim
created a specific legal duty.  Powell v. Dist. of Columbia, 602
A.2d 1123, 1128 (D.C. 1992).  A plaintiff can demonstrate a
special relationship by showing: (1) direct or continuing contact
between the plaintiff and the governmental agency; and (2)
justifiable reliance by the plaintiff.  Powell, 602 A.2d at 1130
(citing Platt v. Dist. of Columbia, 467 A.2d 149, 151 (D.C.
1983)).  For example, "[a] special relationship undoubtedly
exists where an individual assists law enforcement officials in
the performance of their duties" or where police otherwise "make
'active use' of a private citizen" in executing their official

duties.  Morgan v. Dist. of Columbia, 468 A.2d 1306, 1313 (D.C. 1983).  "[I]n narrow circumstances, a special relationship may also be established by a course of conduct between the plaintiff and the municipality strongly indicating the need for police protection."  Morgan, 468 A.2d at 1316.

Here, the facts alleged in the complaint that give rise to the District's duty also are sufficient to allege a special relationship between Gates-Jackson and the District.  Gates-Jackson helped the District in Ridley's prosecution.  The District had direct and continuing contact with Gates-Jackson and gave her personal telephone numbers of District agents.  The District helped place her in a safe house and even contacted her on the day she was murdered.  The complaint alleges a plausible claim of negligence against the District, and the District's motion to dismiss it will be denied.

II.  NEGLIGENCE AGAINST THE UNITED STATES

The United States has moved to dismiss the complaint with prejudice for lack of subject matter jurisdiction, arguing that the complaint's claim against the United States is barred by the discretionary function exception of the Federal Tort Claims Act, 18 U.S.C. § 2712(b).  United States' Mem. in Supp. of Mot. to Dismiss at 7-10.  The United States also argues that the complaint should be dismissed because it fails to state that the United States had a duty to protect Gates-Jackson.  Id. at 10-14.

-13-

Docketing it as a response to the United States' motion, Gates

filed instead another copy of her earlier-filed opposition to the

District's motion to dismiss.  The opposition to the District's

motion does not address the arguments made in the United States'

motion.  The United States notified Gates of the error, United

States' Reply at 1-2, but she did not file thereafter any

opposition addressing the United States' motion.

> Local Civil Rule 7(b) provides that
>
> Within 14 days of the date of service . . . an opposing
> party shall serve and file a memorandum of points and
> authorities in opposition to the motion.  If such a
> memorandum is not filed within the prescribed time, the
> Court may treat the motion as conceded.

Local Civil Rule 7(b).  "[I]t is well settled that a plaintiff's

failure to respond to a motion to dismiss permits a court to

grant the motion as conceded." Hoffman v. Dist. of Columbia, 681

F. Supp. 2d 86, 94 (D.D.C. 2010) (citing Fox v. Am. Airlines, 389

F.3d 1291, 1294-95 (D.C. Cir. 2004) (affirming dismissal of a

complaint where the plaintiff failed to file a timely response to

the defendant's motion to dismiss)).  The plaintiff has not

responded to the United States' motion, so the motion will be

deemed conceded.

## CONCLUSION AND ORDER

Gates' complaint alleges a plausible claim of negligence

against the District of Columbia.  However, Gates has conceded

the United States' motion to dismiss.  Therefore, it is hereby

-14-

ORDERED that the District of Columbia's motion [5] to dismiss be, and hereby is, DENIED.  It is further

ORDERED that the United States' motion [14] to dismiss be, and hereby is, GRANTED, and the complaint against the United States is dismissed with prejudice.

SIGNED this 5th day of March, 2013.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge