UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VANESSA E. GATES,**<br><br>Plaintiff<br><br>v.<br><br>**UNITED STATES OF AMERICA, ET AL.,**<br><br>Defendants. | Civil Action No. 11-1462 (BJR)<br><br>MEMORANDUM OPINION |

**MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS [14] AND [22]**

## I.    INTRODUCTION

Before the Court are Defendant United States' Motion to Dismiss [14] and Defendant District of Columbia's Motion to Dismiss [22]. Upon consideration of the parties' briefing, the relevant case law, and the entire record, the Court grants Defendants' Motions to Dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves the tragic death of Tiffany Gates-Jackson ("Gates-Jackson") at the hands of Roderick Ridley on November 21, 2008. On or about August 13, 2008, Ridley was arrested and charged with arson. Compl. ¶ 11. Gates-Jackson was the victim of the arson. Compl. ¶ 12. Gates-Jackson assisted police in the prosecution of Ridley. Compl. ¶ 13. Ridley was eventually convicted and jailed. Compl. ¶ 15. Subsequently, Ridley was transferred from jail to a halfway house, from which he absconded on October 29, 2008. Def. United States' Mot. to Dismiss, Ex. 1, Decl. of Robert T. Hoffmaster ("Hoffmaster Decl.") ¶ 2.

Robert T. Hoffmaster ("Hoffmaster"), an Inspector in the United States Marshal's Service ("USMS"), assisted the District of Columbia Department of Corrections ("D.C. Dept.")

1

in attempting to apprehend Ridley. Hoffmaster Decl. ¶¶ 1-2. According to Plaintiff, the D.C. Dept. and USMS provided assistance to Gates-Jackson in relocating to a "safe-home."[1] Compl. ¶ 20. Gates-Jackson was in frequent contact with the D.C. Dept. and Hoffmaster, and had Hoffmaster's personal cellular telephone number. She was warned to stay away from her apartment. Compl. ¶¶ 22-23. Gates-Jackson stayed in the "safe-home" for about a month, after which she was moved back to her D.C. apartment. Compl. ¶ 25.

On November 21, 2008, Gates-Jackson called 911 and reported that she had seen Ridley near her apartment. Police officers from the Metropolitan Police Department ("MPD") responded to the call, did not see Ridley in the area, and left shortly thereafter. Compl. ¶¶ 26-28. At 12:19 AM, Jackson called Hoffmaster and told him that Ridley was "outside her apartment." Gates-Jackson told Hoffmaster she had already called MPD. Hoffmaster called D.C. Dept. Investigator Paul Caruso and told him that "we needed to respond to [Gates-Jackson's apartment]." Hoffmaster Decl. ¶ 6. Hoffmaster then began to drive to Gates-Jackson's apartment, which was approximately 35 miles from his home. Hoffmaster Decl. ¶¶ 6-7. During the drive he spoke with Gates-Jackson, who indicated that she had spoken to MPD. Hoffmaster Decl. ¶ 7. Hoffmaster arrived at Gates-Jackson's apartment at 1:25 AM. He did not see any MPD presence or signs of Ridley, but "[a] few minutes later" D.C. Dept. of Corrections Investigator Caruso arrived. Hoffmaster Decl. ¶ 8. Hoffmaster then called Gates-Jackson and spoke to her. After a six-minute conversation, Gates-Jackson began screaming "he's kicking in my door." *Id.* Hoffmaster hung up and called MPD on his radio, and was informed by an MPD officer that "he was right around the corner." *Id.* Hoffmaster and Caruso waited for the MPD to

---

[1]Defendant United States denies involvement in Jackson's "protection or placement in a 'safe home' or her move back to her apartment from that location." Def. United States Mot. to Dismiss at 3. However, in evaluating a motion to dismiss, the Court must accept all of Plaintiff's well-pled allegations as true.

arrive. After the MPD officer arrived, Hoffmaster, the MPD officer, and Caruso attempted to gain entry to the locked apartment building but were unsuccessful. Hoffmaster Decl. ¶ 9. Several more MPD officers arrived. *Id.* Eventually, a tenant in the building opened the apartment building's exterior doors. Hoffmaster Decl. ¶ 10. Hoffmaster found Gates-Jackson dying of wounds inflicted by Ridley. *Id.* After an hour-long search Hoffmaster and the MPD officers found Ridley hiding in a basement apartment and apprehended him. Hoffmaster Decl. ¶ 11.

Gates-Jackson's mother, Vanessa E. Gates ("Plaintiff"), subsequently filed suit in this Court, alleging one count of negligence. Specifically, as to the Defendant United States, Plaintiff alleges that the USMS was negligent in failing "to provide protection" and in failing "to detain, arrest and/or apprehend Roderick Ridley." Compl. ¶ 49. In her opposition to Defendant's Motion to Dismiss, Plaintiff argues that Marshal Hoffmaster "failed to properly execute his duty to protect [Plaintiff] from a fatal attack . . during his attempt to apprehend [Ridley]." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 6.[2]

On March 5, 2013, the Honorable Richard W. Roberts granted Defendant United States' Motion to Dismiss [14] on the grounds that it was unopposed due to Plaintiff's failure to respond, and denied Defendant District of Columbia's Motion to Dismiss [5]. On August 29, 2013, this case was reassigned to the undersigned judge. On November 22, 2013, the Court granted Plaintiff's Motion for Reconsideration [21] of the order granting Defendant United States' Motion to Dismiss and permitted Plaintiff to respond to the motion. Defendant United

---

[2] Hoffmaster declares that he "did not . . . offer to protect Ms. Gates-Jackson or place her in the USMS Witness Protection Program." Hoffmaster Decl. ¶ 13. He also declares that he is "not aware" of any USMS officials who offered to protect Gates-Jackson. *Id.*

States now renews its Motion to Dismiss [14].  Defendant District of Columbia has brought a second Motion to Dismiss [22] on jurisdictional grounds.

### III.    STANDARD

Defendant United States moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  Defendant argues that this Court lacks jurisdiction over Plaintiff's Federal Tort Claims Act ("FTCA") claim.  To survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(1), a plaintiff must establish by a preponderance of the evidence that this Court has jurisdiction over his or her claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 373, 377 (1994) (holding that "the burden of establishing [jurisdiction] rests upon the party asserting jurisdiction"); *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (holding that a plaintiff must establish by a preponderance of the evidence that the Court possesses jurisdiction). "While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction . . . the court must still accept all of the factual allegations in [the] complaint as true."  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (internal citations and quotations omitted).

The FTCA, 28 U.S.C. §§ 1346, *et seq.*, "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).  However, this grant of jurisdiction is subject to several exemptions, including the "discretionary function exemption," which "bars claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Jerome Stevens Pharm. Inc. v.*

*FDA*, 402 F.3d at 1252 (quoting *Sloan*, 236 F.3d at 759). To determine whether the discretionary function exemption applies, a court engages in a two-part test:

> First, the court must determine whether the challenged action involves "an element of judgment or choice," or whether federal law "specifically prescribes a course of action for an employee to follow," leaving the employee "no rightful option but to adhere to the directive." Second, the court must determine whether the challenged action is "of the kind that the discretionary function exception was designed to shield"—that is, actions "based on considerations of public policy."

*Jerome Stevens Pharm., Inc.*, 402 F.3d at 1252 (quoting *United States v. Gaubert,* 499 U.S. 315, 322–23 (1991)) (internal citations omitted). If an action "involves an element of judgment or choice" and is "based on considerations of public policy," it falls within the discretionary function exemption and a district court lacks subject-matter jurisdiction over a claim based on said action. *See Jerome Stevens Pharm., Inc.*, 402 F.3d at 1252.

In a separate motion, Defendant District of Columbia moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that, should the Court dismiss the FTCA claim against the United States, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## IV.   ANALYSIS – UNITED STATES' MOTION TO DISMISS

To determine whether it has jurisdiction, the Court must consider whether the discretionary function exemption applies to Plaintiff's FTCA claim. As indicated above, the burden rests on Plaintiff to establish that the Court has jurisdiction.

### A. Defendant's Actions Were Discretionary

As noted previously, "first, the court must determine whether the challenged action involves 'an element of judgment or choice,' or whether federal law 'specifically prescribes a course of action for an employee to follow,' leaving the employee 'no rightful option but to

adhere to the directive.'" *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1252 (quoting *Gaubert,* 499 U.S. at 322–23).

Plaintiff argues that Hoffmaster lacked discretion in "his duty to provide [Plaintiff] with protection from a dangerous fugitive." Plaintiff narrows the focus of her claim to "whether or not [Hoffmaster] was negligent in executing his ministerial duty to provide protection to the victim of an on-going fatal attack that was occurring in his presence, and whether . . . [Hoffmaster] was negligent by failing to execute his duty to immediately apprehend a fugitive from justice so as to prevent him from inflicting serious bodily harm . . . ." Pl.'s Opp'n at 8. Plaintiff asserts that "[i]t cannot be disputed law enforcement officers have a duty to prevent crime, a duty to arrest suspects . . . and a duty to prevent the commission of a crime . . . ." *Id.* at 9. Plaintiff further argues that Hoffmaster's actions "[did] not involve any element of judgment . . . rather, Plaintiff's complaint is premised upon [Hoffmaster's] failure to take any action pursuant to his duties as a law enforcement officer . . . Hoffmaster completely failed to execute his duties by not only failing to prevent Ridley from gaining access into [Plaintiff's] apartment . . . but by failing to make any attempt to do so . . . ." *Id.* at 9-10.

Plaintiff does not, and cannot, point toward a law or directive that "specifically prescribes a course of action" that Hoffmaster was required to follow and that left Hoffmaster "no rightful option but to adhere to the directive." *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1252. Instead, Plaintiff invokes Hoffmaster's general "duty" as a law enforcement officer to protect Plaintiff and arrest Ridley. However, the duty Plaintiff describes does not qualify as a "specifically described course of action" that deprives Hoffmaster of discretion. The United States Court of Appeals for the District of Columbia Circuit has explicitly held that "[d]ecisions regarding the timing of arrests are the kind of discretionary government decisions, rife with considerations of

6

public policy, that Congress did not want the judiciary 'second guessing.'" *Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008) (quoting *United States v. Varig Airlines, et al.*, 467 U.S. 797, 814 (1984)).

Similarly, in *Shuler* the court held that the government "has discretion to provide informants protection in the way it sees fit, taking into account the relevant public policies at stake within the particular circumstances of the case." *Shuler*, 531 F.3d at 934. Like an informant, Plaintiff was a person who had assisted law enforcement officials. And like the law enforcement agents in *Shuler*, Hoffmaster had discretion "to provide . . . protection in the way [he] sees fit." Plaintiff points to no law, policy, or directive that specifically set out how Hoffmaster was to protect Plaintiff. Indeed, the *Shuler* court noted that even if a law enforcement agent provides a promise of a specific form of protection, the agent "does not abandon his discretion by promising to protect an informant or witness in a specific manner. The agent's promise does not become a specifically prescribed government policy to which 'the employee has no rightful option but to adhere.'" *Shuler*, 531 F.3d at 936 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). In the instant case, Plaintiff does not allege that Defendant provided any promise of protection, much less a specific form of protection. Rather, Plaintiff merely alleges a general "duty" to protect. Accordingly, the Court finds that Hoffmaster's determination regarding how best to protect Plaintiff was discretionary in nature.

### B. Defendant's Actions Involved Considerations of Public Policy

Having concluded that Defendant's actions were discretionary, the Court must now consider "whether the challenged action is 'of the kind that the discretionary function exception was designed to shield'—that is, actions 'based on considerations of public policy.'" *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1252 (quoting *Gaubert*, 499 U.S. at 322-23). Plaintiff again

7

argues that her claim "is based upon a specific set of narrow circumstances . . . ." Pl.'s Opp'n at 12. Plaintiff argues that Hoffmaster's conduct cannot have been based on policy considerations because of Hoffmaster's "specific conduct in failing to provide [Plaintiff] protection at the necessary time . . . ." *Id.* Plaintiff argues that Hoffmaster's "failure to provide emergency assistance to [Plaintiff] immediately upon receiving her call . . . despite his knowledge of Ridley's attempt to kick down [Plaintiff's] door . . . takes this matter outside the realm of those protected as discretionary functions." *Id.* at 15. Plaintiff is more explicit when she argues that "Hoffmaster's decision to remain in his vehicle during the fatal beating of [Plaintiff] by Ridley cannot be said to be based upon any considerations rooted in social, economic or political policy." *Id.* at 15-16.

Plaintiff analogizes her case to *Rourke v. United States*, 744 F. Supp. 100 (E.D. Pa. 1988), in which the court held that the alleged beating of the plaintiff by law enforcement officers during the course of an arrest fell outside the discretionary activity of investigation and arrest. However, *Rourke* clearly states that the plaintiff's claim is only cognizable under the Federal Tort Claims Act because the intentional tort proviso of the Act waives sovereign immunity for assault and other intentional torts. *Rourke*, 744 F. Supp. at 103. In the instant case, there is no allegation that Defendant engaged in an intentional tort.

Plaintiff also analogizes to *Sullivan v. United States*, 129 F. Supp. 713 (N.D. Ill. 1955), in which the court held that an FBI agent's decision to drive his unmarked vehicle at an excessive rate of speed in a congested area did not fall within the discretionary function exemption because the agent "was not acting pursuant to any plan or program formulated at a higher level . . . ." Here, however, Hoffmaster was acting pursuant to a plan or program formulated at a higher

level. Defendant has provided evidence, in the form of USMS Directive § 8.3, which addresses "Fugitive Investigations." According to this directive:

> 2. The initial contact with the person to be arrested is very important and can be most dangerous. Therefore, wherever possible, an arrest should be effected by *sufficient* law enforcement personnel to insure the safety of all participants, and at a minimum, the arrest should be effected by [Redacted - law enforcement sensitive].
>
> 3. The deputy in charge of planning the arrest *will consider whether circumstances dictate informing the local policy authorities in advance*. When it can be anticipated that additional assistance will be required to carry out the arrest effectively and with maximum safety, the deputy-in-charge should solicit local police assistance.

USMS Directive § 8.3 (emphasis added).

The USMS directive at issue clearly vests discretion in the hands of the arresting agent, and bases this discretion on policy considerations, i.e., the safety of the arresting officers. Plaintiff has failed to persuade the Court that Hoffmaster's decision to await backup prior to arresting Ridley did not fall within the rubric of policy concerns. Accordingly, Plaintiff's claim falls within the discretionary function exemption and this Court lacks subject-matter jurisdiction over Plaintiff's FTCA claim.[3]

### VI.    ANALYSIS – DISTRICT OF COLUMBIA'S MOTION TO DISMISS

Defendant District of Columbia argues that the Court should dismiss Plaintiff's remaining claim of negligence, brought pursuant to the District of Columbia Survivor Act, D.C. Code § 12-101. 28 U.S.C. § 1367 permits a district court to exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case . . . ." However, pursuant to 28 U.S.C. §

---

[3] Plaintiff also requests that the Court permit discovery. However, Plaintiff Has not provided "specific indication . . . regarding 'what facts additional discovery could produce that would affect [the court's] jurisdictional analysis.'" *Cheyenne Arapaho Tribes of Oklahoma v. United States*, 558 F.3d 592, 596 (D.C. Cir 2009) (quoing *Mwani v. bin Laden,* 417 F.3d 1, 17 (D.C. Cir.2005)). As such, Plaintiff's request for additional discovery is denied.

1367(c)(3), the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Defendant District of Columba argues that, because the Court has dismissed Plaintiff's sole claim against the United States, the Court no longer has jurisdiction and, therefore, should decline to exercise supplemental jurisdiction over Plaintiff's remaining claim of negligence.

In response, Plaintiff argues that the Court should maintain supplemental jurisdiction because she would be "irreparably harmed" by dismissal. Plaintiff argues that she would be barred from pursuing her claims against the District of Columbia because the statute of limitations to commence a civil action has expired. Pl.'s Opp'n to Def. District of Columbia's Mot. to Dismiss at 4. However, pursuant to 28 U.S.C. 1367(d), any claim subject to supplemental jurisdiction that is later dismissed "shall be tolled while the claim is pending for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *See Stevens v. ARCO Mgmt. of Washington, D.C., Inc.*, 751 A.2d 995, 1003 (D.C. 2000) (holding that, in cases involving claims under the FTCA, dismissal by federal court due to lack of subject-matter led to tolling of statute of limitations during pendency of federal case and for thirty days following dismissal). As such, Plaintiff will have the opportunity to re-file her case in the District of Columbia courts provided she does so within thirty days from the date of this order.

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claim of negligence.

### VII.   CONCLUSION

For the foregoing reasons, the Court grants Defendant United States' Motion to Dismiss [14], and grants Defendant District of Columbia's Motion to Dismiss [22]. An order consistent with this memorandum opinion will issue separately.

Signed on February 27, 2014.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE